The Honorable, the Judges of the United States Court of Appeals for the Fourth Circuit. Oyez, oyez, oyez. All persons having any manner or form of business before the Honorable, the United States Court of Appeals for the Fourth Circuit, are admonished to draw nigh and give their attention, for the Court is now sitting. God save the United States and this Honorable Court. Please be seated. We are prepared to hear International Painters v. Florida Glass and Mr. Segal. Good morning, Your Honors, and may it please the Court. Peter Segal for the appellants. I've reserved five minutes for rebuttal. There are three key facts in this case that I'd like everybody to, you know, make sure we're on the same page about before I sit down this morning, and I think they're sufficient to resolve this case in my client's favor. The first one is that, as is undisputed, there was no point during the arbitration window, before the arbitration deadline, at which my clients would have had any reason to raise any statute of limitations issue. The district court acknowledged that fact, and there's no dispute about it. So we could not reasonably have been expected to raise any statute of limitations issue during the arbitration window until long after the arbitration deadline closed. Well, why do you think the suit is time barred? Your Honor, my clients are... You mean it's not time barred? So my clients believe the suit is time barred because the proof of claim in this case was undisputedly filed more than six years before the claim. And so the key question in this case is whether the proof of claim was in fact a notice, demand, and acceleration of my client's withdrawal liability. And that brings us to the second fact that I wanted to mention, which is that my opponents, the international painters, accepted a bankruptcy distribution based on that proof of claim. And all that depends on your view of what a proof of claim is. All of that depends on whether the proof of claim was in fact a notice, demand, and... And an acceleration. An acceleration, yes. Okay. So you're saying that every time that an ERISA plan sponsor files a proof of claim in a bankruptcy case involving an employer, that that necessarily qualifies as a notice in demand for accelerated payment? So, Your Honor, that is our position, but I don't think you even need to get that far to ruin my client's favor because in this case the proof of claim led to a roughly $48,000 distribution from the bankruptcy estate that the fund in fact accepted without objection. And they have offered no way to reconcile their acceptance of that $48,000 distribution with the idea that they weren't demanding withdrawal liability. So it's undisputed that that $48,000 distribution was based on the same withdrawal liability. But how was the filing an acceleration and default? How do you square that with the language of the statutes in our case law? Sure. So the MPPAA provides that in the event of a default, it is optional for a fund to accelerate or not, and I think that's principally where your question is coming from. In the bankruptcy context, and I think it's important to mention, the MPPAA and ERISA make clear that where there is a conflict with bankruptcy law, bankruptcy law prevails. In the bankruptcy context, it is simply impossible for a 19-month or a multi-year payment schedule to be the means by which the withdrawal liability is paid. The only possibility, because of the priority rules, and this is in both our opening brief and our reply brief, is a lump sum immediate payment, and that's in fact what the proof of claim led to in this case, was a lump sum immediate payment of $48,000. And this gets us to the third undisputed fact that I wanted to mention, which is that the only reason that payment was $48,000 and not the entire amount of the withdrawal liability they're suing on in this case was that Florida Glass's bankruptcy was underfunded. So the proof of claim led to a bankruptcy distribution that was a payment. Your major problem, at least what seems to me to be a real issue that we have to decide at the beginning, is the impact of the MPPAA, which requires this to be in arbitration. And issues of procedure, timeliness, statute of limitations, go to arbitration. I mean, that's what Congress intended this to be. Is that correct? No, Your Honor. I respectfully disagree with that. And even the district court, in fact, disagrees with that. So questions of the statute of limitations are for the court, not for an arbitrator. What court has held that? So the district court in this case held it. It's undisputed. My question is this. Congress set this scheme up for a specific reason, that is, that you had to go in this particular route to do this. But is that not something that is to be arbitrated? Aren't you required to arbitrate these claims? No, Your Honor. And if I can answer, we have a long string cite in our brief of cases in which courts, not arbitrators, have addressed statute of limitations issues. And the reason for that is that the deadline to arbitrate issues arising out of one of these notices and demands is months, not years. I know. I mean, you seem so anxious to have us address the statute of limitations issue. But I think there's some real problems that you have in trying to prove that the pension lawsuit is time barred. And I have problems both on the demand end and on the acceleration point. To me, I just thought the proof of claim here was simply a protective filing to make sure that the pension funds claim wasn't discharged in bankruptcy and then having that brought up as res judicata in another lawsuit. Because the reason I thought this was a protective filing was that the word demand didn't appear anywhere in the document. And it was, it was, we see these kinds of things all the time. And it just seemed to me that, you know, protective filing, which is also contingent, was simply meant as a safeguard against the discharge of the pension funds claim in the bankruptcy process. And I think it would be a very broad holding to say that every proof of claim was somehow a demand that set the statute of limitations running. It didn't, the word demand did not appear anywhere in this, in this, what I think struck me as a protective filing. So, Your Honor, you're correct that the word demand did not appear. There is no precedent for the notion that the word demand specifically has to appear. And by... Well, but that's a, that is at least relevant if it has, if it was a demand, then you would expect it to be demand. Because a party seeking payment, genuinely seeking payment, would want to demand payment because it's in his, it's in its emphasis. It's in his, it's in the party's interest to press the, press the matter, not just to make a protective filing, but to press the matter and say, all right, this is a demand. We want to be paid. Here's the schedule of payments. Get started. Well, Your Honor, the, the proof of claim in this case includes a, quote, immediate payment amount. That's a JA-102. It doesn't say demand, but it demands payment of the immediate payment amount. It says that the fund is owed $1,577,000 and some dollars. At JA-102, it says its calculation of that liability is, in all caps, FINAL. It says payments should be made to Matthew Tokarski, the fund's lawyer. It contains all these indicia of a demand for payment. We cite cases in our brief that say that a proof of claim is, quote, by definition, a demand for payment. And in this case, you don't even have to look at any of that because, in fact, the trustee took it as a demand for payment and paid. Well, where is the default, though? And I'm sorry, I didn't mean to interrupt you, but I think you've already made the point about the trustee taking the payment. Where is the default that occurred? I mean, in order for you to prevail, there has to have been a default, what, November 10th, 2016? So the proof of claim is filed November 10th, 2016. It's undisputed that the bankruptcy filing creates sufficient doubt. So the bankruptcy filing itself is the default. It entitles the – in this case, the bankruptcy filing occurred after the withdrawal. I don't have the date of our withdrawal from the fund off the top of my head. But it's undisputed that the bankruptcy filing here occurred after the withdrawal. And so after we've withdrawn and then filed for bankruptcy, it's undisputed that the fund was entitled to accelerate the payment obligation at that point. Right, but what's the default? What is the default date based on your position? I don't have the precise date off the top of my head. It's undisputed that it was before the proof of claim was filed. I should be able to get it for you when I stand back up. Okay, what constituted the default? Explain that for us. So the bankruptcy filing itself constitutes the default. You're saying the Chapter 11 constitutes a default. Chapter 11 or Chapter 7 constitutes a default. It creates sufficient doubt that the obligation will be fully paid to entitle – But the purpose of 7 is so different from 11. Right. And it seems to me that it's more logical, if you're going to argue a default occurred, to say that it occurred when the 11 proceeding transformed into a Chapter 7. And you knew there was going to be liquidation. But when the purpose of the bankruptcy proceeding in Chapter 11 is to reorganize and pay creditors, where is the default? So it's very common in Chapter 11 also for creditors not to be paid 100 cents on the dollar. And so in light of that, we cite a regulation in our opening brief to the effect that of any bankruptcy filing, it creates sufficient doubt to entitle a fund to accelerate the obligation. They haven't even said that they weren't entitled to accelerate the obligation. You're pushing us in the direction of holding that every proof of claim in bankruptcy automatically sets a statute of limitations running. And I just wonder what the overall implications of that would be for the basic purpose of this multi-employer statute. The whole idea of the multi-employer statute, it's a remedial statute. And the whole statute is designed to protect beneficiaries here. And it seemed to me what you were trying to do was to get out of paying your fair share and becoming a free rider and getting out and, you know, getting, not having to pay, taking all the advantages of the multi-employment plan. And then taking, and then becoming a free rider and saying I don't, I have no liability. I don't have to pay a one cent. And you leave everybody else holding the bag. And that is not in what Congress, I cannot believe that that is what Congress intended with a remedial statute, which the very nature of which in a multi-employer, in a multi-employment situation, the presupposition to that is that every employer pay a fair share. And you're trying to get out of paying your fair share. And I don't like it. So respectfully, Your Honor, with my two minutes, I don't think I can take on all of what you just said. But here's what I'll take on. Congress enacted a six-year statute of limitations. I think it must be common ground that that six-year statute of limitations was not, in fact, designed to say that funds can bring their claims forever. Fair enough. I want to interject so that the point that Judge Wilkerson is making ties in with my threshold concerns. When I asked you about arbitration, which is required under the act, you said statute of limitations is something for the district court to discern. That is true. But the predicate issue of whether that's a notice is an arbitrable issue. That's the problem. You never asked for arbitration. Well, so thank you, Your Honor. I did want to return to this conversation. I'm glad you're giving me the opportunity. No, you don't have to return to it. But I'm just telling you that that plays in in terms of the notice that's necessary here. The courts have said all over the country that issues of arbitration in these types of cases, when you deal with withdrawal liability, go to arbitration. And they include not just the substantive but the procedural parts of it. Now, if we have statute of limitations as being something you can decide in district court, at least the predicate determination of whether that was noticed is an arbitrable issue. And you never asked for arbitration. So, Your Honor, I agree we never asked for arbitration. And if I can explain why, I think the premise of your question is, in fact, incorrect. When an employer receives a notice, if they want to— Give me one case that goes in your direction on that. Your Honor, it's undisputed that the Seventh Circuit case— When you come back, tell me the cases that support your position that that is not arbitrable, the question of whether this was noticed. And if you fail to get arbitration, you can get a district court to do it. Your Honor, may I eat into my rebuttal time for two minutes, please? I've reserved five minutes. I'd like to take two right now, if that's all right. You've got some rebuttal time, and unless my colleagues have further questions of you, I'll ask you to save your time for rebuttal. Okay. Thank you, Your Honor. Okay. Let's hear from the other side here. Good morning. May it please the Court. Brian Pepicelli for the Fund and its fiduciary. We all agree that this case involves a single issue of whether the Fund timely filed its complaint within the six-year statute of limitations period, and we also agree that that threshold issue, that only issue in this case, turns on two predicate disputes under Section 1399 regarding whether the contingent proof of claim was a notice in demand, and if so, whether it was an acceleration. And so, Judge Gallagher— Can you bring that microphone close to you and speak up?  And if we determine the first issue, we don't need to get to the second one. That's correct. So, in order for the control group— To address my predicate, at least the question I brought initially, and that is the question of what is the role of arbitration here. The Act does require that arbitration is the means by which you decelerate this. Congress wanted that to happen. It didn't want it to be piecemealed a whole bit. The question of whether statute of limitations should be something that's arbitration is— I mean, you could go either way. Maybe the ultimate question, whether it's statute of limitations, may be district court, but at least in my view, the predicate determination of whether it is a notice or not is an arbitration issue. And if it is, the failure to ask for it is fatal in this case. Is that fair? From your perspective, does that seem to resonate with you? That's our entire case. Well, not our entire case, but on the first issue. But it would be, because if the answer is yes, that's the end of this case. We don't get into acceleration. We don't get into all the other questions. It really is purely just a question of is this a matter that should have been decided in arbitration, and the failure to ask for arbitration is fatal.  And so the Steelworkers Pension Trust case versus Renko, the 2017 decision, is non-precedential from the Third Circuit, but it addressed a very similar issue, which was whether a bankruptcy proof of claim was a notice in demand under Section 1399. But aren't there cases going both ways on the question of whether, I mean, I take my good colleague's point, but aren't there cases going both ways on the overall question of whether a notice is a statute of limitations and notice under that is an arbitrable issue? I mean, there are cases going both ways on whether that's arbitrable, are there not? I am not aware of any case expressly holding that a predicate dispute under 1399 regarding a notice issue or acceleration issue is not subject to arbitration. In the first instance, I'm not aware of any case to that effect. Because if the suit is not time barred, either because there was, you have to, they have to prove both that it was a demand and that it was an acceleration, right? Correct. Okay, if either one of those is not proven, then the suit would not be time barred, is that correct? That's right, even if this was a notice in demand. And so that, what I think we're getting at is that there are several ways to wrap up this case. And one is by the arbitration issue, which my good colleague has suggested, but another is to find that there was either no demand or there was no acceleration. And if either one of those is the case, then the suit is not time barred. And so that wraps it up. We don't, we wouldn't, we wouldn't have to say that it is or it isn't arbitrable. It could well be arbitrable, but I don't know. It seems to me that the overarching issue here is whether somebody's going to be, whether a company is going to be a free rider and fail to pay its fair share and leave others holding the bag. And to me, that just guts the whole purpose of what this statute, what Congress wanted this statute to accomplish. That is, you get the benefits of the multi-employer plan, and in return for those, you've got to pay your fair share. That's the point. You can't just skip out of town. Agreed, and BES Services, the 2006 decision from this court, it goes through and explains why the arbitration requirement is such a critical part of MEPA's overall statutory scheme. So enforcing this arbitration mandate and requiring that, as the text states, any dispute concerning the determination under 1381 through 1399 shall be resolved through arbitration, that's the end of the case because arbitration is a very important part of the scheme, and it does not allow a group of control group defendants who have assets to pay this underfunding a way to get out of it. And this court's decisions in McDonald and Teamsters 83, they have been cited by district courts in the Northern District of Illinois and Bankruptcy Court for the proposition that this control group framework is- Well, you've got a First Circuit case and a Third Circuit case, both of which indicate, I think, that the statute of limitations, both notice and acceleration, and all of those which are statute of limitations issues, that those basic questions are arbitrable. The predicate- And if they never ask for arbitration, then that's over. Correct. So you can, I don't know, it seems to me that all roads lead to Rome on this, in this question. I can go and say, well, there's no statute of limitations issue because there wasn't, there's no operable demand or there's no operable acceleration. You can go with the First and Third Circuits and say that the notice and the question of demand and acceleration, which are bound up with the notice question, you can say that those would be arbitrable. And then there's a waiver of the arbitration because it wasn't, they didn't ask for arbitration. My point is that it all goes to the same place. How you get there may be said, but no matter how you get there, you end up with the point that you've got to pay, every employer has to pay its fair share. That's where you end up. But you can go there through the waiver of arbitration, or you can go there by saying it's not Tom Bauer because there was no demand. There was no acceleration. Sure. And so just one thing that I would point out is the Third Circus decision in Kiro Leasing. That is referred to by the, by my friends on the other side as trucking employees. But in that case, the site is 377F3D288. And there, the control group defendant cited it for a different proposition, but the court specifically refuses to consider predicate disputes that would have to be resolved through arbitration under the MEPA. And then it even says, including its statute of limitations provision. So that decision is fully consistent with Judge Gallagher's underlying decision, which is even if the statute of limitations defense is not in and of itself subject to arbitration, it can't be based on predicate disputes that are subject to arbitration because that would be an end run around the statutory scheme that Congress enacted. But then even turning to the merits of it, we agree that this case should just be resolved on the arbitration issue. You don't have to get into the other issues. But just looking at the face of the bankruptcy proof of claim, it did list liabilities contingent, which is inconsistent with the notion that liability, that this was a demand because clearly it's an indication that the funds trustees had not yet determined that liability had been triggered. And then it attaches a 19-month installment plan option. It says choices for payment from, and it says either the immediate amount or 19 monthly installments, and then it has an explanation as to what the interest would be under that installment option. And so if you go back to the face of the proof of claim, I believe it's JA100, question 7, how much is the claim? $1.577 million. But then it says, does it include interest? Yes. That interest is only available not for that $1.577 million amount. It's only available for the lump sum option. So this could not have, this was not an acceleration of liability on its face. It is undisputed that the funds trustees did not exercise the acceleration option, and the case could be resolved on that basis too, either because it's not a notice of demand and regardless because it's not an acceleration. Can you pursue both a claim under the bankruptcy proceeding and withdrawal liability? I believe so, yes. So non-bankrupt members of an employer's control group. In other words, it's not an election of remedies. Well, and this is a contingent proof of claim also. So the reason the fund was paid on the contingent proof of claim is because nobody objected to it. So by operation of bankruptcy law, it was deemed allowed without any judicial determination on that. So Judge Gallagher disagreed with the notion that we were taking an inconsistent position that how can we make a claim for an amount and then accept the payment on it if it wasn't a demand. The payment was received because it was provided for by operation of bankruptcy law, not ERISA or MEPA, the M-P-P-A-A. Well, how do you explain away, though, your acceptance of that money in terms of the ERISA framework? It just means that it would have to be credited towards the overall withdrawal liability that was later assessed in March of 2022, and we did credit that once we became aware that payment was received based on this proof of claim. We did credit that distribution towards the last payment in the installment plan. So it was accounted for, but this has jointed several liabilities. And as the Court stated in McDonald, we can't let a group of control group defendants take money out of its front pockets and claim bankruptcy when it just moves it to its back pockets. These are independent obligations that this control group has to owe. And one of the things that one of the first undisputed facts, which we dispute, was that they would have no reason to raise the statute of limitations issue during the arbitration period. Did you just say undisputed facts that you dispute? Yes, because it was in the beginning of Mr. Siegel's argument, he said there's no dispute, but we do dispute the facts. Let's say we have a – some of the questions at least have indicated that you can get to the preferred result of affirming the summary judgment by holding that this is an arbitrable issue and that the arbitration was waived because it was never requested. But you've devoted also extensive sections to your brief in saying, look, there's no demand here, there's no acceleration, the suit is not tombarred, and we should not be forced to litigate the withdrawal of liability claim – I mean, the withdrawal of liability claim in a bankruptcy proceeding. We should be able to make a protective filing and protect their interest in that way, and we should be able, if we wanted to accelerate, there should be some evidence that we were following our own rules in seeking an acceleration. So you've got these several routes. Which – I'm just asking, which do you prefer? What are the implications for pension funds of going the arbitrable route or saying it's not tombarred because there was no demand or there was no acceleration? What are the different implications for the viability of the pension fund in choosing one route or another? Because the way I come in this, as I've said ad nauseum, that I want everybody in these multi-employer plans not to slip out of something. And so from the standpoint of that value in upholding the remedial nature of this statute, which is the fact that there was no demand or no acceleration or that there was a waiver of arbitration, what are the impacts of those different routes upon pension funds in preventing this free rider situation? Well, I agree that this court could resolve it on any way. But if we just take them one at a time – I'm asking you what are the implications for the pension funds and the viability of pension funds going one route as opposed to the other. Okay. And let me add on to that. It seems to me that if the case were decided on failure to arbitrate, it's really kicking the can down the road on the main issue that funds would find very compelling, and that is when does a filing in bankruptcy, does it operate as an acceleration, does it operate as a demand? And if we say no, it seems to me that that is more significant in terms of the body of law than it is if you simply say you should have arbitrated and you didn't. But I don't know. Tell me if I'm wrong on that. Well, I don't think that the court saying that this particular proof of claim was not a notice in demand would be a proclamation that no proofs of claim can ever be a notice in demand. The fund could have labeled this as a claim for withdrawal liability and then in the attachments put everybody on notice that we are – Are you saying to us that this is all fact specific, that there can be plenty of proofs of claims that would operate as an acceleration or that they would operate as a demand? There would be those instances, would it not, if you were sufficiently insistent and you had a schedule of payments and you wanted to pay up? I mean, it would be your option. Sure. It would be your option as to whether you really wanted the proof of claim to operate as an acceleration or a demand. You would have the choice. But all you're saying is we don't want to be in the situation where there's a per se rule that any filing of a proof of claim sets the statute running. And so I would think what you wanted to do from the standpoint of the pension fund is to avoid being put in that corner where every time you sought to protect your interests, you were setting the statute of limitations going. You want the option, do you not, of being able to decide whether you want to frame a proof of claim as a demand or whether you want to frame an acceleration as an acceleration? You want that option, do you not?  We are not arguing that these bankruptcy filings could never satisfy the provisions of MAPA. We're just saying that they do not in this case. Right. But you'd still have to meet. Wouldn't you have to have an acceleration default in order for that to be the case? Yes. The fund would have to expressly exercise the option and put them on fair notice that this full amount of withdrawal liability is now due all at once, which is contrary to the baseline obligation under the statute. But as far as enforcing the mandate to arbitrate first, it would be a weird situation to say that all of these other disputes are subject to arbitration, but then they could hold back a predicate notice issue that they easily could have raised during either of the relevant periods in response to the 2016 proof of claim or the 2022 demand. But they did not raise those, and it was only after they were sued in this case and waived all other defenses did they start raising those. They do dispute having any liability to the fund at all, and they dispute the amount of the liability. They made that clear in the district court proceedings, and they made that clear in the Florida lawsuit that they filed for abusive process against the fund and myself. So to say that they had nothing to arbitrate back in 2016 if this was an accelerated demand for withdrawal liability, when they dispute the fact of the liability, the amount of the liability, and also it might not have even been proper for the fund to accelerate in this case because the statute says a substantial likelihood that the employer cannot pay. Employer here is more than Florida Glass. The fact that Florida Glass is in bankruptcy, that's not necessarily a basis to accelerate when it has other control group members that can pay the liability. And so if they can pay the liability, then they can make the payments on the ordinary schedule. This court's decision in Teamsters 83 involved that situation. It was an interim payments collection action against a group of control group companies when the contributing employer was in Chapter 11 bankruptcy. It was not an acceleration automatically or expressly because nobody exercised the option. All right. We have no further questions. Thank you very much. And you have some rebuttal time, sir. Thank you, Your Honor. Just a couple of quick cleanup items that I promised last time I was standing up. At JA44, the date of the Chapter 11 bankruptcy was August 9, 2016. Mr. Pepicelli just disputed whether that Chapter 11 bankruptcy filing was in fact a default that would have entitled his client to accelerate, but there's no such dispute in the briefing. And at Brief 7, we cited a regulation to the effect that a bankruptcy filing is a default. And again, that was just not disputed in the briefs. I'd like to return to the colloquy that I was having with Judge Wynn just before I sat down. And I really think this is important to my client's position and to a correct understanding of how the statute of limitations operates, so I want to make sure I can get it out if possible. So when an employer receives a notice, demand, and or acceleration, it's irrelevant to this conversation, this specific conversation, whether there's an acceleration or not, there may be nothing to object to in that notice and demand. It may perfectly calculate the liability. It may contain all the attributes that a notice and demand is supposed to have in it. So there would be no reason to initiate an arbitration within the few-month arbitration deadline in that circumstance. And Mr. Pepicelli's position is that if we don't initiate that arbitration, that we would have no reason to initiate. His client can sue us 1,000 years later because we didn't initiate the arbitration within the three months. So naturally, the statute of limitations cannot depend on whether an arbitration was initiated early on because you don't have notice of the actual problem that the statute of limitations is pointing out, which is not a problem in the notice. It's a problem in the lawsuit that could come six years and one day later or it could come 2,000 years later. There's also a problem when withdrawal liability will occur. It doesn't just occur when you stop contributing to the fund. You must also be engaging in some type of contributory or covert work. And to know you are within the next five years, so it's a substantial period of time in between there in which the liability itself could arise, but it didn't arise just by not paying it. But when you file a bankruptcy action, and as I recall, it wasn't really a direct statement saying we are entitled to withdrawal liability. It was a statement of possibly this could happen. So it's a contingent situation. And the bankruptcy world is different than the pension world. Congress had a different place in mind when it enacted this pension act, and it had a lot of safeguards in it. It did something unusual. It actually took it away from the courts and put it with arbitrators. And it did it for a reason. One, it wanted to go quickly. One, it wanted to make sure things were tighter and hold it. So it's there. And as Judge Wilkerson alluded to, there are two circuits I know of, and maybe there are others that decided it differently, that issues dealing with arbitration in this vein, withdrawal liability under the pension act, are uniquely within the arbitrator's vein, and the arbitrator gets to decide those things, not the district courts. So that's the point. And it's not just a question of arbitration. It's the predicate determination of whether this was a notice is an arbitrable issue. You didn't ask for it, not even now. And even after it became aware that you could, you didn't do it within the 60-day period of time. So, Your Honor, we're not challenging whether it's a notice. If an employer wants to challenge whether it's a notice, then it's got to go to arbitration. We're saying it was a notice. There's nothing to arbitrate. It was a notice. We wouldn't go to the arbitrator and say, hey, you just noticed, you know, the fund just noticed a debt that we in fact owe. But what the statute of limitations says is when they notice that debt, that starts a six-year clock, and we have nothing to challenge during the few-month window. But there is no debt if you are not also engaging in covert work, and that was not known at the time. That would be something that an employer could raise in an arbitration. That would be something an arbitrator would determine. Sure, but for the purposes of determining whether there was a notice. But a district court can't, and you didn't ask for arbitration. Because you don't have a debt by simply filing the claim, saying possibly it's going to happen, and all you've done under the withdrawal liability is stop paying. You stop paying. And then once you stop paying, that's not enough. You then have to be engaged in covert work over the next five years. Once that happens, then you have a potential claim for, a real claim perhaps for a liability at the court. Your Honor, my time has expired. May I answer? Just to follow very briefly on what Judge Wynn says. You say, well, there's nothing to arbitrate, but any time you raise a statute of limitations defense, there would be something to arbitrate because the statute of limitations, if you raise it as an affirmative defense, that would automatically bring into contention the question of whether something was a demand and whether something was an acceleration and all the questions of notice that are attendant to that. So, I mean, the idea that, well, there's nothing to arbitrate, but there would be something to arbitrate at any point in time that you raise a statute of limitations defense. Well, this is exactly my point, I think, Your Honor, is that we can't know that we're going to raise a statute of limitations defense until we are sued outside the statute of limitations, which is a six-year statute of limitations. And that's years beyond the deadline to arbitrate. So Congress could not possibly have contemplated that those statute of limitations issues would be submitted to arbitration. You know, every statute of limitations defense is raised generally because the defendant feels that it's way beyond the limitations period. And that's endemic to any statute of limitations defense. It's because you feel that this is a time-barred suit. Right. And so the minute you raise that, it becomes a question of whether it puts into play the whole question of notice and whether that's an arbitrable issue. Well, it does put into play the question of notice, Your Honor, but to hold that we had to have arbitrated that issue within months of receiving the document that we say is notice would effectively eliminate the statute of limitations in the MPPAA because we would be raising— There's no reason that can't be arbitrable. All I'm saying is there are a whole lot of hurdles that you have to jump on this, a whole lot of them, including the basic question of whether every proof of claim in a bankruptcy proceeding is ipso facto something that—a demand or an acceleration that sets a statute running. And so, you know, at any rate, it's time for me to be quiet and to turn it over to my good colleagues and if you have any— If I could just add one point. There was a point I forgot to mention. No, no, no. Your time has expired. Thank you, Your Honor. You've made many, many different points, and we appreciate that very much. But it's time to come down and thank you for your good arguments and proceeding to our next case. Thank you.
judges: J. Harvie Wilkinson III, James Andrew Wynn, Barbara Milano Keenan